IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEBRA A. KILLINGSWORTH          :          CIVIL ACTION
                                :
            v.                  :
                                :
JOHN E. POTTER                  :          NO. 05-4271

MEMORANDUM

Bartle, C.J.                                    March 27, 2007

          On August 10, 2005, plaintiffs Debra Killingsworth, a
postal worker, and her husband David Killingsworth filed this
action against defendants John E. Potter, Postmaster General,
United States Postal Service, and three postal employees, Louis
Spadaro ("Spadaro"), Glenn Sullivan ("Sullivan"), and Roland
Ragsdale ("Ragsdale").  Plaintiff[1] alleged she suffered sexual
harassment as well as retaliation in violation of Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Included
in the complaint against the individual defendants were also
state law claims asserting intentional infliction of emotional
distress, assault and battery, and loss of consortium.

          In a Memorandum and Order dated March 20, 2006, we
granted summary judgment to defendants on plaintiff's retaliation
claim.  The parties subsequently stipulated to the dismissal of
all state law claims against the individual defendants.  Since

_____

1.  When we refer to the "plaintiff" we are speaking of Debra
Killingsworth.

David Killingsworth had only a derivative state law claim for loss of consortium, he is no longer a party to this lawsuit.  <u>See</u> Order of April 10, 2006 (Doc. # 15).  Before the court is the motion of the remaining defendant for summary judgment on plaintiff's now one pending claim of sexual harassment in violation of Title VII under Rule 56 of the Federal Rules of Civil Procedure.

I.

Rule 56 permits us to grant summary judgment in a civil action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  The party moving for summary judgment must make a showing that no genuine issue of material fact exists and that the law requires judgment in its favor.  <u>Liberty Lobby</u>, 477 U.S. at 247-48.  We must view all facts in the light most favorable to the nonmoving party and also draw all reasonable inferences in that party's favor.  <u>Id.</u> at 252-55.

When an employee of the Postal Service believes that he or she has suffered some form of discrimination in violation of federal law, he or she must "consult" an EEO counselor "prior to

-2-

filing a complaint in order to resolve the matter."[2]  29 C.F.R. § 1614.105(a).  The employee "must initiate [such] contact ... within 45 days" of the alleged discriminatory act or the effective date of any personnel action.  Id. § 1614.105(a)(1). This period may be extended by the Postal Service's EEO office only if the postal employee shows that he or she had not been notified of the time limits or was not otherwise aware of them, did not know or should not have known that the discriminatory action had occurred despite due diligence, was prevented by circumstances beyond his or her control from contacting a counselor, or offers any other reason the agency deems sufficient.  See id. § 1614.105(a)(2).  Unless the Postal employee agrees to a longer period of counseling or elects alternative means of dispute resolution, the EEO counselor at the Postal facility must inform the aggrieved employee in writing no less than 30 days after the initial interview of his or her right to file a discrimination complaint within 15 days of receiving such notice.  Id. § 1614.105(d).  If the employee does not comply with these time limits, an agency is required to dismiss the entire complaint.  Id. § 1614.107(a)(2).

        Title VII allows an aggrieved employee to bring a civil action in federal court only if the employee has first exhausted the required administrative remedies.  42 U.S.C. § 2000e-16(c).

---

2.  The regulations govern procedures in many different federal agencies.  For our purposes, we describe the relevant procedure in terms of the Postal Service.

The exhaustion requirement is not jurisdictional but rather is a defense akin to a statute of limitations.  See Zipes v. Trans World Airlines, Inc., 455 U.S. 386, 393 (1982); Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999).  Therefore, the defendant bears the burden to establish that the plaintiff failed to exhaust administrative remedies or did not comply with applicable time limits.  See Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

Because the time limitations in Title VII are not jurisdictional, they may be tolled under appropriate circumstances.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994); Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997).  Our Court of Appeals has instructed that tolling may be appropriate where (1) the "defendant has actively misled the plaintiff respecting the plaintiff's cause of action," (2) the plaintiff has been "prevented from asserting his or her rights" in "some extraordinary way," or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.  Id.  The plaintiff bears the burden of showing the doctrine of equitable tolling should apply.  See Courtney v. La Salle Univ., 124 F.3d 499, 505 (3d Cir. 1997).  Nevertheless, the Supreme Court has explained that "[f]ederal courts have typically extended equitable relief only sparingly ....  We have generally been much less forgiving in receiving late filings where the

-4-

claimant failed to exercise due diligence in preserving his legal
rights."  Irwin v. Department of Veterans Affairs, 498 U.S. 89,
96 (1990); Robinson, 107 F.3d at 1023.

II.

The following facts are undisputed or are stated in the
light most favorable to the nonmovant.  Plaintiff has been
employed as a mail processor or supervisor at the Philadelphia
Processing and Distribution Center ("Distribution Center") of the
United States Postal Service ("Postal Service") since January 8,
1994.  The Postal Service in Philadelphia employs a Manager of
Human Resources whose office is separate from the Postal
Service's Equal Employment Opportunity Office ("EEO Office").
During her employment, plaintiff received training relating to
sexual harassment, as well as other subjects.  At all times
relevant to this action, posters detailing employee's EEO rights,
EEO procedures and time limits, as well as the address and
contact information of the Postal Service's EEO office were
placed on bulletin boards and other common employee spaces on all
floors of the Distribution Center where plaintiff worked.

The record shows that in 2003, Spadaro gave plaintiff
his telephone number and began making sexual comments to her.
Several similar episodes occurred during the winter and became
"more intense" in April, 2004.  Spadaro repeatedly gave plaintiff
his telephone number and said he wanted her to call him and "talk

-5-

dirty."  On one occasion Spadaro told her that he had purchased
"a pair of black stockings" and wanted her to wear them.  Spadaro
continued this behavior until September 17, 2004, when she was
taken from the Distribution Center to a hospital.  Plaintiff
attempted to return from her absence on November 3, 2004.  At
that time Spadaro gave her a piece of paper with his phone number
on it.

          In the spring of 2004, Sullivan told Plaintiff that he
would "like to be that mushroom in your [i.e. her] mouth."  Prior
to making this statement, plaintiff claims that she did not know
him.  That same month, Sullivan followed her to an elevator and,
without consent, kissed her on the lips and touched her
inappropriately.  Sullivan asked plaintiff to go to a hotel with
him and made other comments of a sexual nature in May and June of
2004.  Plaintiff states that Sullivan's inappropriate behavior
ceased prior to July, 2004.

          Finally, plaintiff maintains that Ragsdale began
harassing her in March, 2004.  Before that time, plaintiff often
exchanged pleasantries with him because, like the plaintiff, he
was a former marine.  She states that she often would give him "a
military buddy hug" or a "hand, arm, or shoulder tag" and that
prior to March, 2004 he did not make any comments to her or in
her presence that she considered sexual or otherwise
inappropriate.  In March, 2004, however, Ragsdale made "sexual"

-6-

comments to her and once asked for her phone number.  He asked
her if she wanted to "make some money," to which she did not
respond but instead turned and walked away.  She also alleges
that Ragsdale kissed her several times without permission, and on
one such occasion in July, 2004 he felt her buttocks when she
turned and walked away.

        The record reflects that in July, 2004 the plaintiff
reported Ragsdale's conduct to Joseph Brown, Supervisor of
Distribution Operations.  She also went to see Ronald Lamb
("Lamb"), the Employee Assistance Program Supervisor.[3]  After
making these complaints to her supervisor in July, plaintiff did
not have additional problems with Ragsdale.  Nevertheless,
plaintiff did not initiate pre-complaint counseling with the EEO
office.

        On September 17, the plaintiff again spoke with Lamb in
his office about her allegations of harassment but during the
meeting suffered a panic attack and was taken to a local
hospital.  She stayed in the hospital overnight.  Cindy Davis
("Davis"), a postal supervisor, met the plaintiff at the hospital
early in the morning on September 18 to take a statement from her
regarding her harassment allegations.  Plaintiff did not give a
statement at the hospital and instead accompanied Davis back to

---

3.  Plaintiff claims that she had informed Lamb about the
harassing behavior as early as April, 2004 but maintains that she
said he did not want the matter "to get around the post office."

the Distribution Center.  There the two went to a second floor
office where plaintiff recounted her allegations.

       The plaintiff's description about what happened next
has evolved significantly during this case.  In her Declaration
of January 27, 2006, filed in support of her opposition to
defendant's motion to dismiss, she briefly summarized her meeting
with Davis on the morning of September 18, 2004, as follows:  "At
the post office I was asked to provide a statement regarding the
sexual harassment to Cindy Davis.  At that time, I discussed what
I believed was the more harmful harassment."  Almost a year
later, on January 17, 2007, during her deposition, plaintiff
testified that she made her statement to Davis on the second
floor of the Distribution Center and that she expected "that the
Post Office would take responsibility for their [sic] employees,
for what their [sic] employees had done and said to me."  The
deposition continued:

        Q.  Okay.  Did Ms. Davis tell you anything
        about your rights under EEO or anything like
        that?
        A.  No.
        Q.  Nothing?
        A.  Not that I recall, no.

The defendant filed the motion for summary judgment currently
before the court on February 15, 2007 on the ground that
plaintiff had not exhausted her administrative remedies in a
timely manner.  In support of her response opposing the motion,
plaintiff signed a new Declaration on March 5, 2007, describing

-8-

the events of September 18, 2004 differently from what she had said at her deposition.  She now maintains:

> Once at the post office, Cynthia Davis took me to the second floor, where I was asked to provide a statement regarding my allegations of sexual harassment.  I discussed the sexual harassment as best that I could.
>
> I was also asked by Cynthia Davis to fill out paperwork, approximately 8 pages.  The forms included the Postal Service's EEO form "Information for Pre-Complaint Counseling," P.S. Form 2564-A.  I believe that Ms. Davis also had to fill out EEO Complaint in Discrimination in the Postal Service, PS Form 2565.  The first form was the same form that I filled out on February 25, 2005, to initiate my EEO Complaint.

This was her first mention of an EEO complaint.  Plaintiff has not explained this abrupt contradiction of her prior declaration and deposition regarding her meeting with Davis.

Davis testified without dispute that she did not work in the Postal Service's EEO Office in September, 2004 or thereafter.  She stated that she was not asked by the EEO Office to interview plaintiff but rather did so at the request of Tommy Franklin, a postal manager.  According to Davis, she did not provide plaintiff with any EEO forms.  She explained that in her position as a supervisor she did not have copies of the forms because they are maintained by the EEO Office and that even had plaintiff handed her EEO forms she would not have accepted them because the forms must be returned to the EEO office.  Using the notes from the September 18 meeting, Davis typed a statement and

then, at the direction of Human Relations Manager Lisa Jordan ("Jordan"), destroyed her notes.  Plaintiff's counsel asked Davis during her deposition if she had been instructed to destroy anything else besides her notes.  Davis responded "no."

Killingsworth did not return to the Distribution Center after the September 18 meeting until November 3, 2004, when she attempted to return to work but could not obtain medical clearance.  Meanwhile, on October 4, 2004, Jordan appointed two investigators, Shilda Locust ("Locust") and Raymond Ingram ("Ingram") (collectively "the investigators"), to gather the facts surrounding plaintiff's allegations.  On October 5, 2004, Locust and Ingram went to plaintiff's home to interview her. They interviewed both plaintiff and her husband later that fall at the latter's office.  The defendant has submitted affidavits from both investigators in which they maintain that at no time did they represent themselves as representatives or counselors from the EEO Office of the Postal Service but rather said they were preparing a report for the Manager of Human Resources.  They further state that they never told the plaintiff that they were filing an EEO complaint on her behalf or that she could not bring an EEO action herself.  However, they did provide her with a copy of the Postal Service's policy on sexual harassment as well as a copy of the EEO posters placed around the Distribution Center. Plaintiff does not dispute the affidavits from Locust and Ingram

-10-

but nevertheless stated in her deposition and March 5 Declaration
that she thought they were EEO investigators because "they was
going to take the statements and make sure everything would be
taken care of" and that they promised to "get to the root [of]
the problem."  She does not offer any evidence to support her
assumption that Locust and Ingram worked for the Postal Service's
EEO Office.

      As noted above, plaintiff attempted to return to work
on November 3 but could not get medical clearance.  While at the
postal facility that day, defendant Louis Spadaro gave plaintiff
his phone number, the final act of alleged discrimination for
purposes of this motion.  She returned to work on November 13 and
she remained until March 3, 2005.  In late January, 2005, the
plaintiff telephoned Locust and asked whether she worked in the
EEO Office.  Locust replied that she did not.  It was not until
February 15, 2005 that plaintiff finally initiated formal
counseling with the EEO Office at the Distribution Center.  She
filed her formal complaint that same day concerning the instances
of discrimination she alleged took place between April, 2004 and
November 3, 2004.  The Postal Service EEO Office dismissed the
plaintiff's complaint on April 7, 2005 for untimeliness because
she had not initiated the EEO administrative process within 45
days after the alleged harassment took place.

III.

We assume, without deciding, that the plaintiff asserts a continuing violation of Title VII based on the harassment she claims to have endured between late 2003 and November 3, 2004.[4] See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Thus, pursuant to 29 C.F.R. § 1614.105(a), plaintiff was required to initiate the EEO process forty-five days after November 3 at the latest, that is, by December 18, 2004. She did not do so until February 15, 2005, nearly two months after the deadline. Therefore, unless plaintiff demonstrates that the extraordinary remedy of equitable tolling is appropriate, she has failed to exhaust her administrative remedies and the defendant's motion for summary judgment must be granted. See Irwin, 498 U.S. at 96. Plaintiff attempts to do this by claiming that the Postal Service actively misled her to think that she had initiated the EEO process on September 18 when Davis allegedly presented her with EEO forms. She argues that this entitles her to equitable tolling or, presumably, shows there are trial-worthy issues of fact. She offers only her recent Declaration of March 5, 2007 to support her argument for tolling.

---

4. Despite our assumption, there is little, if any, evidence to support the harassment by Sullivan and Ragsdale "continued" until November 3. Plaintiff admitted that Sullivan's inappropriate behavior ceased prior to July, 2004 and did not complain of any inappropriate behavior from Ragsdale after July, 2004.

There is no legitimate basis to justify equitable
tolling in this case.  Plaintiff's Declaration of March 5, 2007
is of no help to her because it is a "sham" and, therefore, we
will disregard it.  In re CitX Corp., Inc., 448 F.3d 672, 679 (3d
Cir. 2006).  Our Court of Appeals has held that we may disregard
an affidavit, submitted in opposition to a motion for summary
judgment, which contradicts clear testimony previously given by
the same witness and attempts to explain away or patch up an
earlier deposition in an attempt to create a genuine issue of
material fact.  Id. at 679-80 (citing Baer v. Chase, 392 F.3d
609, 624 (3d Cir. 2004)); see also Hackman v. Valley Fair, 932
F.2d 239, 241 (3d Cir. 1991); Martin v. Merrell Dow
Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988).

In her January 27, 2006 Declaration and her deposition
nearly one year later on January 17, 2007, plaintiff stated under
oath that on September 18 she simply gave a statement to Davis
and that the latter did "nothing" regarding EEO rights.  This
testimony was consistent with the affidavits submitted by Davis.
In response to the defendant's motion for summary judgment on the
ground that she failed to initiate the administrative counseling
process, the plaintiff suddenly and conveniently remembers that
Davis gave her Postal Service Form 2564-A and "believes" that
Davis "had to fill out EEO Complaint in Discrimination in the
Postal Service, P.S. Form 2565."  Plaintiff offers no explanation

-13-

for her sudden recollection in March, 2007 that she allegedly completed one form and "believed" she filled out the other and that after the passage of two and one-half years she recalled the precise forms just in time to oppose summary judgment when no such detail was forthcoming in her deposition only two months beforehand.  Absent any explanation from plaintiff, we disregard her March 5, 2007 Declaration as a "sham" because it contradicts the clear testimony offered under oath by the plaintiff on two prior occasions.

Without the March, 2007 Declaration, the plaintiff's deposition and January, 2006 Declaration are consistent with Davis' affidavit in all respects relevant to the motion before us.  Plaintiff has failed to meet her burden to show that equitable tolling is appropriate in this case or to set forth evidence that shows a genuine issue for trial regarding the factual basis underlying her request for tolling.  Therefore, plaintiff has failed to exhaust her administrative remedies in a timely fashion.

Accordingly, we will grant the motion of the defendant for summary judgment.

-14-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEBRA A. KILLINGSWORTH          :          CIVIL ACTION
                                :
            v.                  :
                                :
JOHN E. POTTER                  :          NO. 05-4271

ORDER

AND NOW, this 27th day of March, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of defendant John E. Potter, Postmaster General, United States Postal Service, for summary judgment is GRANTED; and

(2)  judgment is entered in favor of defendant John E. Potter, Postmaster General, United States Postal Service, and against plaintiff Debra A. Killingsworth on her claim of sexual harassment.

BY THE COURT:


/s/ Harvey Bartle III
                                                    C.J.